Ronnie JAMES, Petitioner,

v.

James WALSH, Superintendent of Ulster Correctional Facility, Respondent.

Docket No. 99–3709.

United States Court of Appeals, Second Circuit.

Submitted: Jan. 14, 2002.

Decided: Oct. 15, 2002.

---

**164**

Ruth M. Liebesman, Law Office of Ruth M. Liebesman, New York, NY, for Petitioner.

Thomas B. Litsky, State of New York Office of the Attorney General, New York, NY, for Respondent.

Before OAKES, WINTER, and KATZMANN, Circuit Judges.

WINTER, Circuit Judge.

Ronnie James, a paroled prisoner, applied *pro se* for leave to file a second or successive petition pursuant to 28 U.S.C. § 2254 after his petition was deemed a second, successive petition and transferred to this court by Judge Griesa. We appointed counsel to represent James. Counsel moves to be relieved pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel initially argued that, although James's present habeas petition is not successive within the meaning of 28 U.S.C. § 2244, we should nevertheless dismiss it for its facial lack of merit. In a supplemental letter brief, counsel now argues that because James's present petition is not successive, we have no jurisdiction to dispose of it on the merits. Accordingly, counsel urges us to deny James's application for leave to file a second or successive petition as unnecessary and to refer the matter to the district court.

We hold that James's present petition is not successive within the meaning of Section 2244 and that we lack jurisdiction to review its merits. Thus, we deny James's application as unnecessary, transfer the matter to the district court for a determination of the merits, and grant counsel's motion to be relieved.

## BACKGROUND

In 1989, following his conviction by a jury in New York state court of robbery, criminal possession of a weapon, and conspiracy, James was sentenced to nine to eighteen years incarceration. While incarcerated pending trial on these charges, James was charged with narcotics possession and, after pleading guilty, sentenced to an indeterminate term of five to ten

years incarceration to run concurrently with his nine to eighteen year sentence.

In December 1997, James filed three Section 2254 petitions, which were consolidated by the district court (together, "the 1997 petition"). The 1997 petition raised claims of ineffective assistance of trial and appellate counsel, an unduly suggestive identification procedure, a *Rosario* violation, and a due process violation involving a *Wade* hearing. In October 1998, the district court denied James's 1997 petition as time barred under the Antiterrorism and Effective Death Penalty Act (AEDPA). *See James v. Barkley*, No. 98 Civ. 4383, 1998 WL 729740, at *1–*2, 1998 U.S. Dist. LEXIS 16174, at *3–*4 (S.D.N.Y. Oct. 16, 1998).

In August 1999, James filed another Section 2254 petition ("the 1999 petition"), claiming that the New York Department of Corrections ("DOCS") had erred in its calculation and application of his sentence and that he was being held in violation of state and federal law. Specifically, James alleged that DOCS had failed to apply the credit for time served on his lesser sentence to his overall sentence, and thus miscalculated his conditional release date as April 2000 instead of April 1999.

In March 1998 James had sought recalculation of his sentence through an Article 78 proceeding filed in state court. At the time his 1999 petition was filed, James stated that more than one year had passed with no decision. However, his state petition was in fact dismissed by the New York Supreme Court in October 1998, although James appears never to have been served with the decision. There is no indication that James appealed from the Article 78 dismissal.

The district court determined that James's 1999 petition was a second or successive petition within the meaning of 28 U.S.C. § 2244 and transferred it to this court. *James v. Walsh*, No. 99 Civ. 10469, slip op. at 1 (S.D.N.Y. Oct. 13, 1999). Subsequently, James filed the present application for leave to file a second or successive Section 2254 petition. In the application, James reasserted his claim that DOCS erred in the calculation and application of his sentence, and that he was therefore being held in violation of state and federal law.

On December 22, 1999, we issued an order denying James's application for leave to file a successive Section 2254 petition. However, we stayed the order and appointed counsel to brief the issues of whether: (i) James's attack on the administration of his sentence was properly brought in a Section 2254 petition; (ii) James's current application should be treated as a first petition under *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); and (iii) the failure to treat James's application as a first petition would violate the Suspension Clause. This panel retained jurisdiction over the matter. James was released on parole in April 2000.

In August 2000, counsel filed a brief and joint appendix on James's behalf, arguing that: (i) James's challenge to the administration of his sentence was properly brought in the 1999 petition because Section 2254 is the only means by which James, or any similarly situated state prisoner, can challenge the length of his incarceration; (ii) his present application should be treated as a first petition under *Martinez–Villareal* because his claims would have been premature if raised in his 1997 petition; and (iii) failure to treat his petition as a first petition violates the Suspension Clause because Congress did not narrowly tailor AEDPA's limitations on successive petitions to an exigency justifying suspension of the writ of habeas corpus. The State notified us that it would not be filing a brief in response.

On January 18, 2001, James's counsel moved to be relieved pursuant to *Anders*. In support of her *Anders* motion, counsel submitted a brief reiterating the arguments presented in her original brief filed on James's behalf, but also arguing that: (i) we lack jurisdiction over James's claims because James was not forced to serve more than his maximum sentence; and (ii) James's due process rights were not violated by the State's failure to credit him with time served because no such error occurred. James did not submit a response, although informed of his right to do so.

By order filed November 20, 2001, we ordered counsel to submit a letter brief discussing whether we have authority to dismiss James's application on the merits if, as counsel argued, his 1999 petition was not successful. In her subsequent letter brief, counsel asserts that we do not have the authority to dismiss on the merits an application for leave to file a successive Section 2254 petition if the proposed petition is not successive. Accordingly, she now asks that we: (i) dismiss James's motion for leave to file a successive Section 2254 petition as unnecessary, and (ii) instruct the district court to accept the Section 2254 petition for consideration of the merits.

Thus, the issues before us are: (i) whether AEDPA's gatekeeping requirements apply to James's 1999 petition, given that he challenged the administration, rather than legality, of his sentence, (ii) if so, whether James's 1999 petition is successive within the meaning of Section 2244, and (iii) if the petition is not successive, whether we may consider its merits.

## DISCUSSION

a) *Whether the 1999 Petition is Subject to AEDPA*

■ AEDPA applies to petitions brought under the post-conviction remedy statutes, 28 U.S.C. §§ 2254 and 2255, but not to petitions brought under the traditional habeas statute, 28 U.S.C. § 2241. *See* Pub.L. No. 104–132, 110 Stat. 1214 (1996). We have held that it is the substance of the petition, rather than its form, that determines the applicability of AEDPA and that, when a Section 2241 petition is mislabeled as one filed under Section 2255, the gatekeeping provisions are not triggered. *See Chambers v. United States*, 106 F.3d 472, 475 (2d Cir.1997). Thus, we first must determine whether James's claim that DOCS incorrectly credited his time served was properly brought under Section 2254, and, therefore, is subject to the gatekeeping requirements of AEDPA, or whether it was functionally a Section 2241 petition, which would not trigger AEDPA. We conclude that James's 1999 petition was properly brought under Section 2254 and, as such, is subject to AEDPA.

In *Chambers*, 106 F.3d at 474, we held that a federal prisoner's challenge to the *execution* of a sentence is properly filed pursuant to 28 U.S.C. § 2241, rather than Section 2255, because Section 2255 allows a federal prisoner to challenge only the legality of the original *imposition* of a sentence. *Id.* at 474–75. We have explained that "[n]othing in the language of section 2255 indicates that the statute may be used to attack" the execution of one's sentence. *Cabrera v. United States*, 972 F.2d 23, 26 (2d Cir.1992). However, *Chambers* did not address the issue of whether a similar claim brought by a state prisoner attacking the execution of a sentence is properly brought pursuant to Section 2241 or Section 2254.

■ Unlike Section 2255, which allows a federal prisoner to challenge only the legality of a judgment imposing a sentence,

Section 2254 permits a state prisoner to file a habeas petition "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim that one is "in custody" in violation of federal laws is broader than a claim that the imposition of one's sentence is illegal. A federal due process challenge claiming state incarceration beyond that authorized by a judgment and sentence would fall within this broader category of claims. *See McGinnis v. United States ex rel. Pollack,* 452 F.2d 833 (2d Cir.1971) (affirming a grant of Section 2254 relief to a state prisoner seeking a recomputation of his latest release date). The plain language of the pertinent statutes indicates, therefore, that a federal prisoner may challenge the imposition, but not the execution, of a sentence under Section 2255, while a state prisoner may challenge either the imposition or the execution of a sentence under Section 2254.

Moreover, Section 2254(b)(1) requires state prisoners to exhaust all available state court remedies before filing a Section 2254 petition, whereas Section 2241 contains no such exhaustion requirement. Had Congress intended to make Section 2241 available to state prisoners, it would likely have required, in the interests of comity, that state prisoners challenging the execution of their state-imposed sentences first exhaust their remedies in the state courts.

█ We therefore conclude that James's petition claiming improper execution of his sentence has been properly brought under Section 2254 and is subject to the gatekeeping provisions of AEDPA.

b) *Whether the 1999 Petition Is a Successive Petition*

AEDPA's gatekeeping provisions apply only to "second or successive" petitions within the meaning of 28 U.S.C. § 2244. Thus, we turn to whether James's 1999 petition should be deemed "second or successive."

AEDPA does not define what constitutes a "second or successive" petition. Courts have uniformly rejected a literal reading of Section 2244, concluding that a numerically second petition does not necessarily constitute a "second" petition for the purposes of AEDPA. *See United States v. Barrett,* 178 F.3d 34, 42–44 (1st Cir.1999). To interpret the term "second or successive," courts look to the pre-AEDPA abuse-of-the-writ doctrine. *See Martinez–Villareal,* 523 U.S. at 643–45, 118 S.Ct. 1618; *Muniz v. United States,* 236 F.3d 122, 127 (2d Cir.2001) (per curiam) ("We ... answer the question of whether a petition is second or successive with reference to the equitable principles underlying the abuse of the writ doctrine.").

█ Under the abuse-of-the-writ doctrine, a subsequent petition is "second or successive" when it raises a claim that was, or could have been, raised in an earlier petition. *See McCleskey v. Zant,* 499 U.S. 467, 493–95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *cf. Thomas v. Superintendent/Woodbourne Corr. Facility,* 136 F.3d 227, 229 (2d Cir.1997) (per curiam) (instructing a district court to determine whether a petition was successive by considering "whether the prior petition was dismissed with prejudice and whether the instant petition attacks the same judgment that was attacked in the prior petition"). Consequently, a claim raised in a prior Section 2254 petition, but dismissed as premature, is not subject to the gatekeeping provision of Section 2244. *See Martinez–Villareal,* 523 U.S. at 643–44, 118 S.Ct. 1618. Similarly, a petition is not "second or successive" when a state petitioner whose first petition was dismissed for fail-

ure to exhaust state remedies brings a new petition based on the exhausted claim. *See Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir.1996) (per curiam) ("[A]pplication of the gatekeeping provisions to deny a resubmitted petition ... would conflict with the doctrine of writ abuse ...."). By the same logic, when a subsequent habeas petition contains both a new claim that could not have been raised in a prior petition and a claim that was previously raised, we deem such petition "first" as to the new claim and "second" as to the old claim. *See Galtieri v. United States,* 128 F.3d 33, 37–38 (2d Cir.1997).

■ In the present case, James's 1999 petition alleged the incorrect application of credit for time served and a miscalculation of the conditional release date. James could not have argued that he was in custody in violation of laws of the United States before the time when, according to his calculations, he should have been released, that is, before April 1999. Thus, the present claim had not arisen by 1997, when James filed his first habeas petition. Because the claim asserted in the 1999 petition did not exist when James filed his 1997 petition, the 1999 petition was not "second or successive" for the purposes of AEDPA's gatekeeping provisions.

■ Moreover, a denial of permission for James to bring the present claim as a first habeas petition might implicate the Suspension Clause, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. We have held previously that AEDPA's limitations on a prisoner's ability to bring habeas petitions may violate the Suspension Clause if they create an "unreasonable burden" to habeas relief. *Rodriguez v. Artuz,* 990 F.Supp. 275, 282

(S.D.N.Y.1998), *aff'd on opinion below,* 161 F.3d 763, 764 (2d Cir.1998) (per curiam).

Denial of habeas relief in the present case may implicate the Suspension Clause, because it would constitute a complete denial of any collateral review of a claim that arose only after James filed the 1997 petition. Such a denial would be analogous to refusing to hear claims that were erroneously dismissed as untimely in a previous habeas petition, which we have stated would raise a serious constitutional question with respect to the Suspension Clause. *See Muniz,* 236 F.3d at 128. Like *Muniz,* the present case involves a claim that is not barred by *res judicata,* but would nevertheless be totally barred from habeas review by an unconstitutional reading of AEDPA's gatekeeping provisions.

■ Other circuits have arrived at the same conclusion, holding that claims that could not have been raised in a prisoner's earlier habeas petition do not implicate the gatekeeping requirements of Section 2244. *See, e.g., Crouch v. Norris,* 251 F.3d 720, 724 (8th Cir.2001); *Hepburn v. Moore,* 215 F.3d 1208, 1209 (11th Cir.2000) (per curiam); *In re Taylor,* 171 F.3d 185, 187–88 (4th Cir.1999); *In re Cain,* 137 F.3d 234, 236 (5th Cir.1998) (per curiam); *Walker v. Roth,* 133 F.3d 454, 455 (7th Cir.1997) (per curiam); *United States v. Scott,* 124 F.3d 1328, 1330 (10th Cir.1997) (per curiam).

We therefore conclude that James's 1999 petition was not "second or successive" within the meaning of Section 2244.

*c) Whether We Have Authority to Dismiss James's Petition on the Merits*

■ The final question is whether we may reach the merits of James's 1999 petition, despite concluding that the petition was not "second or successive." Our answer is no.

Because we are not reviewing a judgment entered by a district court, we have no jurisdiction to review the merits of James's 1999 petition. Section 2244 authorizes us to make a single determination: whether a second or successive petition meets specific criteria for a grant of leave to file the petition in the district court. Consequently, we may do one of two things: enter an order denying the application, or direct the district court to consider the claims raised in the application. Nothing in the statutory language allows us to consider the merits of claims raised in a nonsuccessive application. When we conclude that a claim brought in an application for leave to file a successive habeas petition is not subject to the gatekeeping provisions of Section 2244, we merely transfer the petition to the district court with directions to accept the petition for filing. *See Muniz,* 236 F.3d at 126, 129. Other circuits have interpreted Section 2244 similarly, holding that when a court of appeals deems a petition not second or successive, the application should be dismissed as unnecessary and referred to the district court for filing. *See Crouch,* 251 F.3d at 725; *LaGrand v. Stewart,* 170 F.3d 1158, 1160 (9th Cir.1999); *In re Cain,* 137 F.3d at 237; *Walker,* 133 F.3d at 455.

## CONCLUSION

For the foregoing reasons, we deny James's application as unnecessary and transfer the matter to the district court with instructions that the petition be accepted for filing. We grant counsel's *Anders* motion.