OPINION OF THE COURT
Richard Lee Price, J.
Petitioner moves to vacate parole warrant No. 577078 claiming that his current detention is illegal because the Department of Correctional Services (DOCS) administratively calculated his sentence to run consecutive to an undischarged term of parole even though the sentencing judge was silent on the matter. The Division of Parole (Division) claims that the sentence runs consecutive to the undischarged term by operation of law and, therefore, petitioner’s writ is without merit and should be dismissed in its entirety.
In deciding this matter, the court considered the following: verified petition for a writ of habeas corpus, affirmation in opposition to petition for a writ of habeas corpus, verified reply, supplemental affirmation in opposition to petition for a writ of habeas corpus, supplemental reply to return for a petition for a writ of habeas corpus (pro se), and supplemental reply No. 2 to return for a petition for a writ of habeas corpus (pro se).
Findings of Fact
On December 8, 1993, petitioner was sentenced as a second felony offender to A-h to 9 years’ incarceration for criminal sale of a controlled substance in the third degree. On January 30, 2001, Justice Laura Blackburne of Queens County Supreme Court sentenced petitioner as a second felony offender to JVa to 9 years’ incarceration for criminal sale of a controlled substance on or near school grounds and criminal sale of a controlled substance in the third degree. Justice Blackburne, however, was silent as to whether this sentence would run consecutive to the prior undischarged term; nor was any notation set forth on the commitment sheet. Petitioner was released to parole supervision on April 20, 2005 with a calculated maximum expiration date of October 17, 2013. On May 7, 2008, petitioner was arrested and incarcerated under parole warrant No. 577078 for alleged violations of the conditions of his parole. Petitioner brings the instant writ of habeas corpus challenging his detention under this warrant.
*889 Conclusions of Law
Penal Law § 70.25 (2-a) mandates:
“When an indeterminate or determinate sentence of imprisonment is imposed pursuant to section 70.04, 70.06, 70.08 [or] 70.10 . . . , and such person is subject to an undischarged indeterminate or determinate sentence of imprisonment imposed prior to the date on which the present crime was committed, the court must impose a sentence to run consecutively with respect to such undischarged sentence.” (Emphasis supplied.)
Petitioner was sentenced pursuant to Penal Law § 70.06 as a second felony offender; hence, section 70.25 (2-a) applied and required that the sentence be imposed consecutive to the undischarged term. Nonetheless, when imposing sentence on January 30, 2001, Justice Blackburne did not state on the record that the imposed sentence would run consecutive to any undischarged sentence as compelled by Penal Law § 70.25 (2-a). Petitioner thus argues that because the record is silent, his sentence should run concurrent to any undischarged term citing Penal Law § 70.25 (1) (a).[1] However, as argued correctly by Division, Penal Law § 70.25 (1) specifically excludes subdivision (2-a).
Both parties agree, however, that the sentence should have been imposed consecutive to the undischarged term; they merely disagree as to whether DOCS was authorized to correct the sentence. Petitioner contends that only the sentencing court is empowered to impose sentence while Division argues that since the sentencing court lacked discretion as to whether to sentence petitioner to a consecutive term, the sentence runs consecutively by operation of law and DOCS was simply calculating the sentence as such.
In a case parallel to the case at bar, the Third Department recently held that “DOCS had no authority to calculate . . . sentences consecutively where the court did not do so.” (People ex rel. Gill v Greene, 48 AD 3d 1003, 1005 [3d Dept 2008], lv granted 2008 NY Slip Op 76736[U] [2008];[2] see also Matter of Ettari v Fischer, 54 AD3d 460 [3d Dept 2008] [same]; but see *890 People ex rel. Correa v New York State Div. of Parole, 52 AD3d 1251 [4th Dept 2008], Iv denied 11 NY3d 704 [2008],)[3] In Gill, the Third Department reached its holding without determining whether section 70.25 (1) (a) applied to petitioner’s case;[4] rather, it found that regardless of that section, DOCS exceeded its authority when it calculated sentences consecutively when the sentencing court was silent on the issue. (See Matter of Lilley v James, 22 Misc 3d 456, 459 [Sup Ct, Madison County 2008].)
This determination by the Third Department in Gill finds its origins in the Second Circuit decision of Earley v Murray (451 F3d 71 [2d Cir 2006], cert denied sub nom. Burhlre v Earley, — US —, 127 S Ct 3014 [2007]; Gill at 1004). In Earley, the Second Circuit held: “The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect.” 0Earley at 75.) In fact, Earley was the apparent catalyst for a significant change in New York State sentencing law because with the Earley decision came numerous challenges to the administrative imposition of postrelease supervision by DOCS. Indeed, New York State sentencing practice has undergone significant change since the rendering of two Court of Appeals decisions: Matter of Garner v New York State Dept, of Correctional Servs. (10 NY3d 358 [2008]) and People v Sparber (10 NY3d 457 [2008]). In Garner (at 362), the Court of Appeals held that “[t]he combined command of CPL 380.20 and 380.40 is that the sentencing judge — and only the sentencing judge — is authorized to pro *891 nounce the PRS component of a defendant’s sentence.”[5] Prior to the Court of Appeals decisions of Garner and Sparber, judges routinely did not impose postrelease supervision under the assumption that it applied by operation of law. What followed was a massive campaign by Division to assess which cases had administratively imposed postrelease supervision and to request resentencing of those cases pursuant to newly-enacted Correction Law § 601-d.
The obvious offshoot of the Court of Appeals decisions of Garner and Sparber is that only sentencing courts — and not DOCS — are empowered to impose all portions of sentences, not just postrelease supervision. Therefore, Division’s assertion that the instant issue “is utterly distinct from, and not impacted by, the Court of Appeals’ recent holding in Garner” is inaccurate. (Aff in opposition K 14.) Clearly, if only sentencing courts may impose postrelease supervision even though no discretion exists in its imposition, then sentencing courts similarly must announce that a sentence is to run consecutive to a prior undischarged term even though no discretion exists in that instance.
Division, however, argues that unlike postrelease supervision, “which is an integral part of a defendant’s punishment, the manner in which a new sentence relates to another sentence previously imposed by another judge is a collateral matter” citing Wilson v McGinnis (413 F3d 196 [2d Cir 2005]) in support. (Supp off in opposition If 7.) In Wilson, the Second Circuit found that failure to inform a petitioner during his plea that his sentence would run consecutive to his prior sentence was a collateral matter that did not render his plea involuntary. However, the court reasoned that although the state statute provided that the sentences would run consecutively, the statute was not absolute. The sentencing court retained discretion to impose a concurrent sentence under certain circumstances; therefore, imposition of a consecutive sentence was not a direct consequence of the plea. The Second Circuit held: “Under these circumstances, we reject Wilson’s contention that § 70.25(2-b) had such a ‘definite, immediate and largely automatic’ effect on the range of punishment as to constitute a direct consequence of the plea.” (Wilson at 200.) Clearly, the sentencing court’s discretion impacted the Second Circuit’s determination that the *892 imposition of the sentence as consecutive was a collateral consequence of the plea. Penal Law § 70.25 (2-a) however, affords the sentencing judge no discretion; its consequences, therefore, are definite and direct. Regardless, the issue of voluntariness of a plea is utterly distinct from the issue of the validity of sentencing terms not announced at sentence. It is the announcement at sentence that breathes life into the sentencing terms. (CPL 380.20.)
It is important to note that DOCS is not rendered impotent upon the determination that a sentencing court was silent as to whether a sentence runs consecutive to an undischarged term. As the Third Department in Gill notes, Correction Law § 601-a instructs that, if it becomes apparent that a person was erroneously sentenced, departments must contact the district attorney who may, in turn, seek resentence. Contrary to Division’s assertion, DOCS is not empowered to correct a sentence unilaterally. (See Matter of Dreher v Goord, 46 AD3d 1261 [3d Dept 2007].)
In the instant matter, petitioner contends that, if the sentence is calculated to run concurrent with the undischarged term, his maximum expiration date is November 7, 2007. If that date is in fact correct, petitioner would be entitled to immediate release from custody and, hence, habeas corpus relief. (People ex rel. Kaplan v Commissioner of Correction of City of N.Y., 60 NY2d 648 [1983]; but see Moeller, supra [habeas corpus does not lie because petitioner was entitled to a resentencing hearing and not immediate release].) Because this court cannot verify this date calculation, petitioner’s release from custody is stayed 30 days to allow DOCS and/or Division to calculate petitioner’s maximum expiration date consistent with this decision. If the maximum expiration date is found to have lapsed, it is ordered that petitioner’s parole warrant will be deemed vacated and petitioner released from custody.

. Penal Law § 70.25 (1) (a) states, in pertinent part: “If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run as follows: (a) An indeterminate or determinate sentence shall run concurrently with all other terms.”

. Division asserts that, pursuant to CPLR 5519, a statutory automatic stay is applicable to the instant case while the Court of Appeals decides Gill. *890 However, section 5519, according to the plain language of the statute, stays only the cases currently on appeal. Because petitioner is not a party to Gill, section 5519 does not stay this matter. (See People ex rel. Moeller v Rivera, 21 Mise 3d 802 [Ulster County Ct 2008].)

. Division cites Matter of Hopkins v New York State Bd. of Parole (51 AD3d 1311 [3d Dept 2008]) for the proposition that even the Third Department is not following Gill. To the contrary, the Third Department clearly reaffirmed the Gill holding in Ettari v Fischer (supra). Furthermore, Hopkins dealt with the denial of a request for parole release to which the court held petitioner’s claim to the high standard of “demonstrating] that respondent’s decision was affected by ‘irrationality bordering on impropriety.’ ” (Hopkins at 1312.)

. Division alleges that Gill based its analysis and conclusion on Penal Law § 70.25 (1) (a). (Aff in opposition 11 11.) This court disagrees with Division’s reading of Gill.

. While the Court of Appeals reached its decision on statutory grounds and not constitutional grounds and specifically declined to comment on the applicability of Earley, the influence of Earley is perceptible.